**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride, Esq. (SBN: 297557)
ryan@kazlg.com
Jonathan Gil (SBN: 347431)
jonathan@kazlg.com
2221 Camino del Rio South, Suite 101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Jason Phillips

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**JASON PHILLIPS,**

Plaintiff,

v.

**BETTER RISE CAPITAL, LLC,**

Defendant.

Case No.:

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. Plaintiff Jason Phillips ("Plaintiff") brings this action challenging the unlawful actions of Better Rise Capital, LLC ("Defendant"). Defendant negligently, knowingly and/or willfully placed unauthorized phone calls to Plaintiff on his cellular phone which is registered with the National Do-Not Call Registry ("DNC") and after he requested not to receive telemarketing calls from Defendant or on their behalf, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., ("TCPA"), thereby invading Plaintiff's privacy.

2. Plaintiff seeks injunctive relief prohibiting such conduct in the future and monetary relief for his injuries caused by Defendant's unlawful conduct.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. Defendant placed numerous unauthorized telemarketing phone calls on Plaintiff's cellular telephone for the purpose of soliciting business from Plaintiff after Plaintiff requested Defendant to cease such calls, in violation of 47 U.S.C. § 227, *et seq*.

5. The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case.

6. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

## THE TELEPHONE CONSUMER PROTECTION ACT

7. Congress enacted the Telephone Consumer Protection Act of 1991 "to address 'the proliferation of intrusive, nuisance calls' to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2022) (citing § 2, ¶¶ 1, 6, 105 Stat. 2394).



KAZEROUNI LAW GROUP, APC

8. Recognizing the rapid advancement of communication technology and its growing intrusion into everyday life, Congress sought to protect consumers from emerging forms of unsolicited and disruptive communications. See id. ("Advances in automated technology made it feasible for companies to execute large-scale telemarketing campaigns at a fraction of the prior cost, dramatically increasing customer contacts"); *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370 71 (2012) ("Voluminous consumer complaints about abuses of telephone technology… prompted Congress to pass the TCPA").

9. As the TCPA's sponsor, Senator Hollings, remarked, such communications were "the scourge of modern civilization," and he hoped that consumers would be empowered with meaningful remedies. *Mims*, 565 U.S. at 384.

10. The Supreme Court has also emphasized the broad public consensus behind the TCPA's mission, noting that "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613 (2020).

11. In pursuit of its goals to "ban[] certain practices invasive of privacy," Congress "direct[ed] the Federal Communications Commission (FCC or Commission) to prescribe implementing regulations." *Mims*, 565 U.S. at 371. These implementing regulations—authorized under Section 227(c) of the TCPA—underscore "the need to protect residential telephone subscribers' privacy rights and to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

12. The relevant regulatory provisions are codified in 47 C.F.R. § 64.1200(c)-(d).

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises out of violation of federal law, the TCPA.

14. Personal jurisdiction is established because Defendant conducts



KAZEROUNI LAW GROUP, APC

business in the State of California. At all times relevant herein, Defendant conducted business in the State of California, and within this judicial district.

15. Personal jurisdiction and venue are proper in the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) Defendant resides within this judicial district; (2) the conduct complained of herein occurred within this judicial district; and (3) Defendant conducted business within this judicial district at all times relevant.

16. Specifically, Defendant invaded Plaintiff's privacy by contacting Plaintiff on his cellular telephone in violation of the TCPA while Defendant resided within this judicial district.

## PARTIES

17. Plaintiff is a natural person residing in the County of Alameda, State of California

18. Defendant, is, and at all times mentioned herein was, a limited liability company organized under the laws of the State of California, with a principal place of business or headquarters located at 2525 Main Street, Suite 410, Irvine, CA 92614. Defendant conducts business in the State of California, and within this judicial district.

19. Defendant is a nationwide provider and marketer of commercial loans.

## FACTUAL ALLEGATIONS

20. At all times relevant, Plaintiff was an individual residing within the State of California.

21. At all times relevant, Defendant conducted business in the State of California.

22. At all times relevant, Plaintiff was assigned, and was the owner of, a cellular telephone number ending in 6689 ("Cell Phone"). Plaintiff is the sole user and/or subscriber of his Cell Phone.

23. Plaintiff registered his number, ending in 6689, with the National Do-





KAZEROUNI LAW GROUP, APC

Not-Call registry on or about June 30, 2009.

24. In or around February 2026, Defendant began placing numerous telephone calls to Plaintiff's Cell Phone from various phone numbers.

25. Specifically, Defendant placed the first telemarketing call on Plaintiff's Cell Phone on or about February 26, 2026.

26. Two days later, on or about February 28, 2026, Defendant placed another telemarketing call on Plaintiff's Cell Phone. After this call, Defendant left a voice message to market its commercial loans.

27. On March 17, 2026, Defendant placed another call on Plaintiff's Cell Phone and left a voice message marketing its commercial loans.

28. In April 2026, Defendant placed another twelve (12) telemarketing calls on Plaintiff's Cell Phone. Defendant left voice messages marketing its commercial loans following eleven (11) of these calls.

29. In May 2026, Defendant continued its incessant telemarking calls to Plaintiff's Cell Phone, placing another twelve (12) calls. Defendant left voice messages marketing its commercial loans after eleven (11) of these calls.

30. On June 1, 2026, Defendant made two additional telemarketing calls to Plaintiff's cell phone.

31. That same day, at approximately 2:23 p.m., Plaintiff called Defendant to identify the entity placing the calls on his Cell Phone.

32. When Plaintiff was connected with Defendant's phone line, he was met with an automated call tree that instructed callers to press certain numbers based on the information or assistance they were seeking.

33. From this call tree, Plaintiff selected the option that connected him with one of Defendant's live representatives. Once connected, the representative was hesitant to state the name of their employer and instead claimed that they worked for a "lending group operating out of Irvine, CA," which is where Defendant has its principal place of business.



KAZEROUNI LAW GROUP, APC

34. During this call, Plaintiff expressly requested that Defendant remove him from their internal call list and cease all telemarketing communications to his Cell Phone.

35. By making this request, Plaintiff expressly revoked any alleged consent that Defendant may have relied upon to make such telemarketing calls.

36. Despite this request, Defendant placed another telemarketing call and voice message on Plaintiff's Cell Phone the next day on or about June 2, 2026.

37. Frustrated by Defendant's failure to honor his opt-out request, Plaintiff placed a series of outgoing calls to phone numbers that Defendant left as "call-back" numbers in its voice messages.

38. Specifically, Plaintiff called Defendant three times on or about June 2, 2026. The first two calls were placed to Defendant's number, (866) 771-6013, but were disconnected before Plaintiff could speak with a representative. Plaintiff's third call, to Defendant's number (855) 357-2016, successfully reached a representative of Defendant. Plaintiff then reiterated his request for Defendant to remove him from its internal call list and to cease all telemarketing communications to his Cell Phone.

39. Despite this additional request, Defendant placed another telemarketing call on Plaintiff's Cell Phone the next morning, on June 3, 2026, at 9:02 a.m.

40. In response to this call, Plaintiff called Defendant at approximately 12:48 p.m. After following the prompts of the automated call tree, Plaintiff was connected with a representative of Defendant. Plaintiff then requested once again that Defendant cease its telemarketing communications to his Cell Phone.

41. However, that same day, at approximately 3:40 p.m., Defendant placed another call on Plaintiff's Cell Phone.

42. Following this call, Plaintiff began another series of outgoing calls to Defendant to reiterate his opt-out request.

43. Specifically, Plaintiff called Defendant eight times on or about June 3, 2026. Plaintiff's first seven (7) calls were disconnected before he eventually reached



KAZEROUNI LAW GROUP, APC

a representative at approximately 4:07 p.m. Plaintiff then reiterated his request to opt-out of all future telemarketing communications from Defendant.

44. Despite Plaintiff's extensive efforts, and yet another express opt-out request, Defendant continued placing its calls and voice messages on Plaintiff's Cell Phone.

45. Indeed, over the rest of the month of June 2026, Defendant placed another sixteen (16) telemarketing calls on Plaintiff's Cell Phone. Defendant also left voice messages after fourteen (14) of the calls.

46. On June 30, 2026, Plaintiff called Defendant and navigated the same automated call tree that he had encountered during his previous calls. From there, Plaintiff reached one of Defendant's Senior Advisors who identified himself as "Levi." During that conversation, Levi identified his employer by name as "Better Rise Capital." During this conversation with Levi, Plaintiff once again expressly opted out of future telemarketing communications.

47. However, Defendant continued to place telemarketing calls on Plaintiff's Cell Phone.

48. Throughout June 2026, Plaintiff called several of Defendant's phone numbers back. While the incoming local numbers varied, they all routed to the same automated call tree. Additionally, the callback numbers provided in the voicemails Plaintiff received could be traced back to Defendant.

49. On July 1, 2026, Defendant made another two calls to Plaintiff's Cell Phone, one of which was placed at approximately 7:20 a.m.

50. Over the remainder of the month of July 2026, Defendant placed twenty-four (24) telemarketing calls on Plaintiff's Cell Phone and left voice messages after twenty-three (23) of the calls.

51. As of August 14, 2026, Defendant sent Plaintiff an additional nine (9) phone calls which all contained the similar prerecorded voicemails.

52. At a minimum, Defendant called Plaintiff eighty-three (83) times, fifty-



KAZEROUNI LAW GROUP, APC

four (54) of which occurred after Plaintiff's initial opt-out request on or about June 1, 2026.

53. In addition to its telemarketing calls, Defendant also left at least seventy-five (75) prerecorded voice messages marketing its commercial loans to Plaintiff.

54. Defendant's voice messages were left by a rotating list of Defendant's representatives, including but not limited to, individuals identifying themselves as Carol, Sharon, Lexi, and Victoria. Each representative left their own message which followed the same script word for word as their prior messages. The only aspects of the scripts that varied between messages were the dates and the values of the commercial loans being offered.

55. Due to the impersonal, generic, and similar nature of the voice messages, these messages were likely prerecorded and used by Defendant to advertise its services to many individuals simultaneously.

56. Defendant made these calls to promote and sell its goods and services, as the voicemail messages referenced Defendant's commercial loans and directed Plaintiff to call Defendant back at various phone numbers to discuss the nature of the loans offered.

57. Upon information and belief, Defendant does not adhere to a valid internal Do Not Call Policy and does not take adequate steps to ensure that any entities making the calls on its behalf adhere to an internal Do Not Call policy.

58. Similarly, Defendant does not abide by the law governing phone numbers listed on the National Do Not Call Registry.

59. Defendant failed to institute policies as required by the TCPA prior to initiating telephone solicitations. Alternatively, to the extent that Defendant instituted such policies, it does not adhere to them.

60. Plaintiff is informed and believes and here upon alleges, that these calls were made by Defendant or on Defendant's behalf by Defendant's agent, with

KAZEROUNI LAW GROUP, APC

Defendant's permission, knowledge, control and for Defendant's benefit.

61. Through Defendant's conduct, Plaintiff suffered an invasion of privacy as protected by the TCPA.

62. Defendant invaded Plaintiff's privacy and forced him to live without the full utility of his Cell Phone by occupying it with one or more unwanted calls and/or voice messages, consuming its storage, and by creating nuisance and lost time.

63. The telephone number Defendant or its agents called was assigned to a cellular telephone service for which Plaintiff incurs a charge pursuant to 47 U.S.C. § 227(b)(1)(A)(iii).

64. The phone calls to Plaintiff were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

65. Plaintiff did not have a business relationship with Defendant at any point in time.

66. By leaving prerecorded messages on Plaintiff's phone to advertise its commercial loans, Defendant violated 47 U.S.C. § 227(b)(1)(A).

67. Upon information and belief, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the internal do-not call provision in 47 C.F.R. § 64.1200(c)-(d).

68. Each of the above unsolicited telephonic communications by Defendant and/or its agents violated 47 U.S.C. § 227(c)(5), including the national and internal do-not call provision in 47 C.F.R. § 64.1200(c)-(d).

69. Additionally, by placing a telemarketing call on Plaintiff's Cell Phone at approximately 7:20 a.m., on July 1, 2026, Defendant violated 47 C.F.R. § 64.1200(c), which prohibits the placing of any telephone solicitation to a residential telephone subscriber before the hour of 8:00 a.m.

70. Defendant's failure to record and honor Plaintiff's numerous requests evidence Defendant's failure to implement proper procedures prior to the initiation



KAZEROUNI LAW GROUP, APC

of the telephone solicitations at issue.

71. Even assuming Defendant had policies in place prior to the initiation of the telephone solicitations at issue, the repeated failures to adhere to that policy demonstrated a lack of compliance. *See Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 141 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017), citing *In the Matter of Dynasty Mortg., L.L.C.*, 22 F.C.C. Rcd. 9453, 9466 (2007).

72. Receiving Defendant's unauthorized phone calls drained Plaintiff's Cell Phone battery and caused Plaintiff to incur additional electricity expenses and wear and tear on his cell phone.

73. Because Plaintiff is alerted when a call or voicemail message is made to his cellular telephone, the unsolicited telephone solicitations that Defendant transmitted to Plaintiff's phone invaded Plaintiff's privacy, was a nuisance, and distracted and aggravated Plaintiff upon receipt.

74. Plaintiff was personally affected because Plaintiff was frustrated, distressed, disturbed, and felt harassed because Defendant and/or its agents continued to send unsolicited and unauthorized telemarketing phone call solicitations to Plaintiff's Cell Phone, without Plaintiff's consent, and after Plaintiff had expressly revoked any prior-existing consent to receive such calls.

75. Defendant's conduct constituted multiple violations of the TCPA.

## FIRST CAUSE OF ACTION

## NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA

## 47 U.S.C. § 227, *ET SEQ*.

76. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

77. The forgoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. § 64.1200.

78. These violations include incessant calls using an artificial and/or



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

prerecorded voice to Plaintiff's Cell Phone, without any prior express consent in violation of 47 U.S.C. § 227(b).

79. Additionally, Defendant made two or more telemarketing calls in any given year to Plaintiff's phone number which is registered with the National Do-Not-Call registry in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

80. Further, Defendant placed a telemarketing call on Plaintiff's Cell Phone before the hour of 8:00 a.m. in violation of 47 C.F.R. § 64.1200(c).

81. Finally, Defendant failed to maintain procedures necessary to adhere to an internal Do-Not-Call list in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d).

82. Defendant knew or should have known that Plaintiff's number was registered on the National Do-Not-Call registry because it had been registered since 2009. Defendant also had actual knowledge of Plaintiff's desire not to receive future calls. Defendant's violations were therefore willful or knowing.

83. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to, and seeks, injunctive relief prohibiting such conduct violating the TCPA in the future.

84. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to, and seeks, an award of $1,500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3) and 47 U.S.C. § 227 (c)(5).

85. Alternatively, Defendant's violations of the TCPA were negligent and Plaintiff is entitled to, and seeks, an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(c)(5)(C).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for the following relief:

- A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;
- An injunction prohibiting Defendant from calling Plaintiff without his prior express consent;
- An award of actual and statutory damages;
- Treble damages for willful violations; and
- Any other further relief that the court may deem just and proper.

**JURY DEMAND**

86. Plaintiff is entitled to, and demands, a trial by jury on all issues so triable.

Dated: August 21, 2026

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: *s/ Ryan L. McBride*
Ryan L. McBride, Esq.
*Attorney for Plaintiff*

KAZEROUNI LAW GROUP, APC